IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:23-CV-45-FL-KS

| | |
|---|---|
| WEYERHAEUSER COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| DANIEL INTERNATIONAL CORPORATION, ) | |
| f/k/a Daniel Construction Company, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Defendant's motion to compel written discovery responses pursuant to Fed. R. Civ. P. 37 and for Plaintiff to designate a corporate witness to testify on topics pursuant to a Fed. R. Civ. P. 30(b)(6) notice [DE #36]. Plaintiff has responded in opposition [DE #38], and Defendant has replied [DE #39].[1] For the reasons stated below, Defendant's motion to compel is granted.

## BACKGROUND

On March 13, 2023, Weyerhaeuser Company ("Weyerhaeuser" or "Plaintiff") initiated this lawsuit against Daniel International Corporation ("Daniel" or "Defendant") alleging breach of a contractual indemnity provision from a contract purportedly entered into by the parties in 1971. Weyerhaeuser asserts that it "incur[red] damages, costs, and expenses in excess of $500,000" by defending and settling a South Carolina state-court mesothelioma lawsuit brought by a plaintiff

---

[1] The court held two informal discovery hearings about this discovery dispute and allowed the parties an extended and case-specific briefing schedule [DE #35].

named Nicholas Murphy (hereinafter "the Murphy litigation"[2]). (Compl. [DE #1] at 4.)

Murphy sued producers of asbestos and owners of premises containing asbestos where Murphy worked over the course of his career as a welder. (*See generally* Pl.'s Resp. Opp'n, Ex. 3 – *Murphy* Complaint [DE #38-4] ("*Murphy* Compl.").) In the Murphy litigation, Weyerhaeuser was sued as a premises defendant in connection with Murphy's work and alleged asbestos exposure at Weyerhaeuser's paper mill in New Bern, North Carolina. (*Murphy* Compl. ¶¶ 73, 81; Compl. ¶ 11.) As a premises defendant, Weyerhaeuser was expressly sued for negligence. (*Murphy* Compl. ¶¶ 179–193.)

During the course of the Murphy litigation, Weyerhaeuser tendered its defense to Daniel. (*See* Compl. ¶ 15.) These tenders do not appear to be based on the indemnity provision at issue from the alleged 1971 contract, but rather appear to have been made pursuant to an alleged 1970 agreement between the parties. (*See id.*; Pl.'s Resp. Opp'n, Ex. 6 – Tender Correspondence [DE #38-7] ("Tender Correspondence") at 2–12.) Daniel rejected Weyerhaeuser's tenders. (Compl. ¶ 16; Tender Correspondence at 2–12.)

---

[2] Weyerhaeuser has attached a copy of the Murphy litigation complaint. (Pl.'s Resp. Opp'n, Ex. 3 – *Murphy* Complaint [DE #38-4].) The case appears to be captioned as *Murphy et al. v. Covil Corp. et al.*, No. 2020CP4001354, Court of Common Pleas, Richland County, South Carolina (filed Mar. 6, 2020). Daniel was also sued in the Murphy litigation.

Weyerhaeuser claims it settled the Murphy litigation for an undisclosed amount on November 4, 2021. (Compl. ¶ 17.) Thereafter, Weyerhaeuser received (from Daniel) a copy of the purported 1971 contract containing the indemnity provision that forms the basis of this action. (Compl. ¶ 18.) Weyerhaeuser again tendered the Murphy litigation to Daniel, this time on the express basis of the 1971 contract indemnity provision,[3] and Daniel again rejected Weyerhaeuser's tender. (Compl. ¶¶ 19–20; Tender Correspondence at 13–15.) Weyerhaeuser filed this lawsuit shortly thereafter.

Weyerhaeuser did not attach to its complaint a copy of the purported 1971 contract with the indemnity provision, but the complaint alleges that the indemnity provision "provides, in pertinent part," that the "Contractor [Daniel] shall indemnify and hold harmless the Owner [Weyerhaeuser] . . . from and against any loss, liability, claim, demand for damages for bodily injuries . . . . arising out of or relating to the performance of the Work under Contract . . . ." (Compl. ¶ 9) (alterations and ellipses in original). In its response to the instant motion to compel, Weyerhaeuser has attached excerpts from the purported 1971 contract which contain the indemnity provision at issue. (Pl.'s Resp. Opp'n, Ex. 1 – 1971 Contract Excerpts [DE #38-2] ("1971 Contract Excerpts") at 7.) The unaltered text of the indemnity provision is as follows:

---

[3] This tender was also made in reliance on another alleged contract between Weyerhaeuser and Daniel. (Tender Correspondence at 13–15 (referencing an indemnity provision in a 1975 contract).)

3

> (b) The Contractor shall indemnify and hold harmless the Owner and Engineer from and against any loss, liability, claim or demand for damages for bodily injuries including death and/or property damage arising out of or relating to the performance of the Work under this Contract, except when caused by the negligence of the Owner or Engineer.

(*Id.*)[4]

The gravamen of the instant discovery dispute centers on the following broad categories of information sought by Daniel and resisted by Weyerhaeuser: (A) Weyerhaeuser's or its Engineer's potential negligence in relation to Murphy's exposure to asbestos at the New Bern mill; (B) work performed by other contractors at the New Bern mill for whom Murphy worked, when and for whom Murphy worked at the New Bern mill, and under which specific contracts Murphy worked (including other contracts between Daniel and Weyerhaeuser); and (C) Weyerhaeuser's damages in connection with the Murphy litigation settlement and Weyerhaeuser's decision and underlying reasons for settling the claims against it.

Weyerhaeuser has refused to provide discovery regarding these categories for several reasons. First and foremost, Weyerhaeuser contends that its potential negligence is irrelevant because, as a matter of law, it owed no duty to Murphy. (Pl.'s

---

[4] The excerpts provided by Weyerhaeuser appear to be from different parts of the alleged 1971 contract. For example, the indemnity provision appears to be from an excerpt of a section called "General Conditions" (1971 Contract Excerpts at 6–7), but other excerpts appear to be from different sections or separate documents (*see id.* at 8–12). More specifically, one section of the excerpts titled "Article V – The Contract Documents" (which itself appears to be excerpted from a component titled "Contract Agreement") lists several components of the "Contract Documents," including, among other things, "The General Conditions" and "The Contract." (*Id.* at 11.) The "Contract Agreement" excerpt is not dated and only bears an unwitnessed signature from a purported Daniel representative. (*Id.* at 9, 12.)

4

Resp. Opp'n at 4–6 ("Weyerhaeuser did not owe any duty to Mr. Murphy. As a result, nothing Daniel seeks in its discovery requests 'relating to the negligence of Weyerhaeuser' will ever be of any consequence in determining this action."). In support, Weyerhaeuser relies heavily on *Smith v. Schlage Lock Co., LLC*, 986 F.3d 482 (4th Cir. 2021) (per curiam). (Pl's Resp. Opp'n at 4–5.) Second, Weyerhaeuser contends that information regarding work performed by other contractors and from the time period of 1965 through 1980 (as requested by Daniel) is irrelevant. (*Id.* at 9.) Third, while Weyerhaeuser has repeatedly said that it will disclose the amount it paid to settle the Murphy claims pursuant to a court order and that it has no objection to the court "ruling partially in Daniel's favor . . . if solely limited to disclosing the amount for which Weyerhaeuser settled the *Murphy* lawsuit," it objects to Daniel's requests for "extraneous information regarding the settlement that is unrelated to the amount of damages Weyerhaeuser seeks from Daniel in this case." (*Id.* at 6–7.) Weyerhaeuser has specifically identified as seeking extraneous information Daniel's Request for Production ("RFP") 22[5] and RFP 24[6], and more broadly, any request for

---

[5] RFP 22 requests "[a]ll documents comprising or concerning or relating to any and all analysis of the facts, reasons, and recommendations for settling the Nicholas Murphy Lawsuit on behalf of [Weyerhaeuser] including, but not limited to, any memos, pre-trial reports, asbestos case profiles, Asbestos Litigation Form (ALFs), or similar Documents." (Def.'s Mot. Compel, Ex. 2 – Daniel's First Set of RFPs [DE #36-2] at 5–6.)

[6] RFP 24 requests "[c]opies of any and all agreements and correspondence with counsel for Nicholas Murphy in the Nicholas Murphy Lawsuit, including any settlement agreements entered by Weyerhaeuser Company and plaintiffs in the Nicholas Murphy Lawsuit. (Def.'s Mot. Compel, Ex. 2 – Daniel's First Set of RFPs [DE #36-2] at 6.)

5

information related to Weyerhaeuser's potential negligence as to the Murphy litigation. (*Id.* at 7–8.)

## DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Relevance "has been broadly construed to encompass 'any possibility' that the information sought may be relevant to the claim or defense of any party." *EEOC v. Sheffield Fin., LLC*, No. 1:06-CV-00889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007); *see also Martin v. Bimbo Foods Bakeries*, 313 F.R.D. 1, 5 (E.D.N.C. 2016) (quoting *Sheffield Fin.*, 2007 WL 1726560, at *3); *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-CV-66, 2020 WL 2311668, at *2 (W.D. Va. May 8, 2020) (acknowledging the 2000 and 2015 amendments to Rule 26(b)(1) and concluding that the discovery rules are to be interpreted broadly); 8 Wright & Miller, Fed. Prac. & Proc. § 2008 (3d ed.) (summarizing history of Rule 26 and noting that the 2015 amendment "did not affect a dramatic change in the scope of discovery").

Rule 26 requires the court to limit the frequency or extent of discovery if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; "the

6

party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or the discovery sought is outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). The rule also authorizes the court to impose appropriate limitations on discovery in order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Such protective orders may include, among other things, provisions "forbidding the disclosure or discovery," "specifying terms . . . for the disclosure or discovery," "prescribing a discovery method other than the one selected by the party seeking discovery," or "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A)–(c)(1)(D).

"The party resisting discovery bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). "To meet this burden, the non-moving party 'must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law.'" *Johnson v. N.C. Dep't of Justice*, No. 5:16-CV-679-FL, 2018 WL 5831997, at *5 (E.D.N.C. Nov. 7, 2018) (quoting *Mainstreet Collection*, 270 F.R.D. at 241). "[T]he court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).

If a motion to compel is granted, then "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated

7

Case 4:23-cv-00045-FL-KS   Document 40   Filed 07/01/24   Page 7 of 19

the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). A court may decline to award reasonable expenses only if one of three exceptions apply. Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).

### A. Weyerhaeuser's and its Engineer's Potential Negligence is Discoverable

Weyerhaeuser takes the position, based on *Smith v. Schlage Lock Co.*, 986 F.3d 482 (4th Cir. 2021) (per curiam), that its potential negligence will never be at issue in this lawsuit. Weyerhaeuser's position is meritless.

Assuming Weyerhaeuser's interpretation and application of *Smith* is correct,[7] the text of the alleged indemnity provision contains an express carve-out for

---

[7] The court offers no opinion as to the applicability of *Smith* to the instant discovery dispute. However, as Daniel has pointed out, there are several reasons to question its applicability. (Def.'s Reply [DE #39] at 1–4.)

First, *Smith* dealt with application of what the Fourth Circuit labeled "the independent-contractor exception" to the general rule in North Carolina that "landowners owe a duty of reasonable care to all lawful visitors" and said duty of care "extends to lawfully present independent contractors and their employees." *Smith*, 986 F.3d at 489–90 (first citing *Nelson v. Freeland*, 349 N.C. 615 (1998); and then citing *McCorkle v. N. Point Chrysler Jeep, Inc.*, 208 N.C. App. 711 (2010)), 492 ("independent-contractor exception to landowner liability"). However, to determine whether this exception applies, a court must look to "the actual work undertaken by independent contractors and their employees." *Smith*, 986 F.3d at 490 (quoting *McCorkle*, 208 N.C. App. at 715); *see also McCorkle*, 208 N.C. App. at 714 ("[W]hether the duty of reasonable care applies depends on whether or not the danger at issue may be categorized as "incident to the work undertaken" by the independent contractor." (footnote omitted).) It is the landowner who bears the burden "to establish that another entity in fact had 'exclusive dominion and control of the defective' aspect of the property." *Smith*, 986 F.3d at 490 (quoting *Petty v. City of Charlotte*, 85 N.C. App. 391, 394–95 (1987)). Here, the 1971 Contract Excerpts offer no insight into this fact-dependent inquiry; these excerpts only indicate that the alleged 1971 contract was for "Production Efficiency Increase" work and that the type of project was "Plant Addition." (1971 Contract Excerpts at 3–6.) Weyerhaeuser's

8

Weyerhaeuser's or its Engineer's negligence. (1971 Contract Excerpts at 7.) North Carolina law[8] is clear that parties may enter into contractual agreements that except or modify common-law duties so long as such contractual agreements are not "contrary to public policy or prohibited by statute."[9] *Sylva Shores Ltd. Partnership v.*

---

claim that it was "in doing this work for Daniel pursuant to contract with Weyerhaeuser that Mr. Murphy alleges he was injured" (Pl.'s Resp. Opp'n at 6) misses the point. The question is whether the alleged asbestos exposure was incident to the work undertaken by Daniel pursuant to the alleged 1971 contract, or whether the alleged asbestos exposure was still within the dominion and control of Weyerhaeuser as landowner such that the independent-contractor exception should not apply. Given the briefing and supporting evidence presented by Weyerhaeuser in its opposition to the motion to compel, the court cannot say at this point. *See Mozingo by Thomas v. Pitt Cnty. Mem. Hosp., Inc.*, 101 N.C. App. 578, 588 (1991) ("[W]hen the facts are in dispute or when more than a single inference can be drawn from the evidence, the issue of whether a duty exists is a mixed question of law and fact."), *aff'd*, 331 N.C. 182 (1992).

Other facts may render *Smith* inapposite. *Smith* dealt with a ground-up construction of a new lock production facility, *Smith*, 986 F.3d at 485, 490, but here it is unclear what the "Production Efficiency Increase" work/project involved. Daniel has proffered evidence that Murphy was exposed to insulation dust by Weyerhaeuser employees. (Def.'s Reply, Ex. B – Murphy Deposition Excerpts [DE #39-2].) This raises a factual issue as to whether Weyerhaeuser's New Bern mill was in operation while Murphy was working there pursuant to the "Production Efficiency Increase" project. *See Mozingo*, 101 N.C. App. at 588.

Also, the procedural juncture of *Smith* is different than that here. *Smith* affirmed a summary judgment order by the district court, so there was a more fully developed factual record upon which those courts could determine the correct application of North Carolina law. Here, though, the factual record is undeveloped on relevant issues. *See Mozingo*, 101 N.C. App. at 588.

[8] This court's subject-matter jurisdiction is invoked pursuant to 28 U.S.C. § 1332. (Compl. ¶ 4.) North Carolina substantive law is therefore applied. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[9] Weyerhaeuser does not contend that the negligence carve-out in the alleged indemnity provision is contrary to public policy or prohibited by statute. (Pl.'s Resp. Opp'n at 1–9.)

9

*Hibbard*, 175 N.C. App. 423, 427 (2006) (quoting *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 242–43 (2000)); *see also Kirkpatrick & Assoc., Inc. v. Wickes Corp.*, 53 N.C. App. 306, 308 (1981) ("In an indemnity contract, the agreement will be construed to cover all losses, damages, and liabilities which reasonably appear to have been within the contemplation of the parties, but not those which are neither expressed nor reasonably inferable from the terms."). "[W]hen parties contract at arm's length, the provisions in the parties' contract are 'the law of their case,' and courts are without power to revise the contract." *Sylva Shores*, 175 N.C. App. at 427 (quoting *Suits v. Old Equity Life. Ins. Co.*, 249 N.C. 383, 386 (1959)). Accordingly, the alleged contractual indemnity provision that forms the basis of this lawsuit expressly puts Weyerhaeuser's and its Engineer's negligence at issue. That Weyerhaeuser settled the claims against it in the Murphy litigation, which presumably included the negligence claim referenced above, only bolsters the relevance of its and its Engineer's potential negligence. At this procedural juncture, Daniel is thus entitled to discovery on this issue.

Daniel contends that this issue is raised by Interrogatories 4, 5, & 7–12; RFPs 6–9, 15–17, 20–24, & 29; and Deposition Topics 4–6, 11, & 17–21. (Def.'s Mem. Supp. Mot. Compel [DE #37] at 5.) Weyerhaeuser has not contended otherwise. (Pl.'s Resp. Opp'n at 4–6.) Weyerhaeuser has therefore failed to carry its burden to show why Daniel's motion to compel should be denied. *See Mainstreet Collection*, 270 F.R.D. at 241; *Johnson*, 2018 WL 5831997, at *5. Daniel's motion to compel as to

Interrogatories 4, 5, & 7–12; RFPs 6–9, 15–17, 20–24, & 29; and Deposition Topics 4–6, 11, & 17–21 is therefore granted.

### B. Work Performed by Other Contractors for Whom Murphy Worked is Discoverable as is Work Murphy May Have Performed for Daniel under Other Contracts with Weyerhaeuser

Daniel also seeks discovery regarding work performed by other contractors at the New Bern mill for whom Murphy worked, particularly a contractor known as Brown & Root, as well as work performed by Murphy for Daniel pursuant to other contracts/projects at the New Bern mill. (Def.'s Mem. Supp. Mot. Compel at 7–8.) These requests are mostly summed up in Daniel's RFP 14, which requests "[a]ll [d]ocuments establishing when Nicholas Murphy worked at the New Bern facility, who he was working for, and what projects he was working on." (Def.'s Mot. Compel, Ex. 2 – Daniel's First Set of RFPs [DE #36-2] at 5.) In response, Weyerhaeuser argues that Daniel's requests are irrelevant because "Daniel did not assert as an affirmative defense any sort of apportionment or allocation of fault by other contractors for whom Murphy may have worked at the New Bern facility at other times."[10] (Pl.'s Resp. Opp'n at 9.)

Daniel is entitled to discovery regarding Murphy's potential asbestos exposure at the New Bern mill while performing work for Daniel under another

---

[10] In the heading of this section of its brief, Weyerhaeuser states that the time period for which Daniel seeks information is "irrelevant." (Pl.'s Resp. Opp'n at 9; Def.'s Mot. Compel, Ex. 2 at 5 (RFP 13 and RFP 16 requesting information for time period of 1965 through 1980).) Weyerhaeuser does not explain why the time period of 1965 through 1980 is irrelevant. (Pl.'s Resp. Opp'n at 9.)

11

contract/project (i.e. not the alleged 1971 Production Efficiency Increase project) or for other contractors at the New Bern mill.[11] Such information is relevant to whether Murphy was exposed to asbestos at the New Bern mill while working for Daniel under any contract containing the indemnity provision at issue in this lawsuit. Weyerhaeuser fails to appreciate that this information is relevant to the question of whether injuries suffered by Murphy "arose from" or "are related to" work performed by Murphy for Daniel under the alleged 1971 contract. (*See* 1971 Contract Excerpts at 7.) Such information is critical to Weyerhaeuser's contractual indemnity claim; Daniel need not have pleaded an affirmative defense of apportionment to discover such information. Lastly, the time period for which Daniel seeks this information appears reasonable. (*See* Pl.'s Resp. Opp'n at 9; Def.'s Mem. Supp. Mot. Compel at 9 (arguing that the timeframes are relevant).)

Daniel's requests for information related to work performed by Brown & Root at the New Bern mill are also relevant under Rule 26(b)(1). If Murphy was exposed to asbestos while working for Brown & Root at the New Bern mill, that would be relevant to the contractual indemnity claim at issue in this lawsuit. Accordingly, Daniel's discovery requests seeking such information are relevant. Similarly relevant

---

[11] Daniel has pointed to evidence that Murphy worked at the New Bern mill for other contractors (Brown & Root and Cost Effective Maintenance). (Def.'s Mem. Supp. Mot. Compel at 7–8; Def.'s Reply at 5–6). The Social Security records for Murphy provided by Weyerhaeuser also show that Murphy worked for Daniel both before and after the likely time period for the 1971 Production Efficiency Increase project. (Pl.'s Resp. Opp'n, Ex. 4 – Murphy Social Security Records [DE #38-5]; Def.'s Reply, Ex. A – Daniel's Notification of Contract for Production Efficiency Project [DE #39-1] at 2 (indicating schedule dates for project).)

12

would be any information, requested in RFP 16, provided by Weyerhaeuser to Daniel or Brown & Root regarding asbestos exposure at the New Bern mill.[12]

Daniel contends that RFPs 13, 14, & 16, and Deposition Topics 3, 4, 8, & 10 seek such information. (Def.'s Mem. Supp. Mot. Compel at 5.) Weyerhaeuser does not contend otherwise, arguing only irrelevancy based upon the time period and lack of an apportionment argument. (Pl.'s Resp. Opp'n at 9.) Weyerhaeuser has therefore failed to carry its burden to show why Daniel's motion to compel should be denied. *See Mainstreet Collection*, 270 F.R.D. at 241; *Johnson*, 2018 WL 5831997, at *5. Accordingly, Daniel's motion to compel responses to RFPs 13, 14, & 16, and Deposition Topics 3, 4, 8, & 10 is therefore granted.

### C. Weyerhaeuser's Settlement of the Murphy Litigation and Related Information is Discoverable

Daniel further seeks to compel discovery concerning the Murphy litigation. Murphy sued Weyerhaeuser for negligence. (*Murphy* Compl. ¶¶ 179–193.) Weyerhaeuser purportedly settled for an undisclosed amount. (Compl. ¶ 17.) Weyerhaeuser claims to have paid approximately $621,195.50 in legal fees defending and settling the Murphy litigation. (Pl.'s Resp. Opp'n at 7 (citing Pl's Resp. Opp'n, Ex. 7 [DE #38-8] (Pl.'s Initial Discl.) at 3).) Weyerhaeuser now seeks to recover from Daniel the undisclosed amount of settlement plus its legal fees.

Weyerhaeuser states that it "has no objection to the Court ruling partially in Daniel's favor . . . if solely limited to disclosing the amount for which Weyerhaeuser

---

[12] This is also relevant to the potential negligence of Weyerhaeuser.

settled the *Murphy* lawsuit" but contends that "[a]ll other discovery sought by Daniel regarding Weyerhaeuser's damages and settlement of the *Murphy* lawsuit is irrelevant under Rule 26(b)(1)." (Pl.'s Resp. Opp'n at 8.) In its brief, Weyerhaeuser only specifically discusses Daniel's RFP 22 and RFP 24. (Pl.'s Resp. Opp'n at 6–8.)

The settlement information sought by Daniel is relevant and proportional to the claims of this action. The basis of Murphy's suit was negligence. By seeking indemnification of the amount paid in settlement of the Murphy litigation, Weyerhaeuser has put into question the terms of the settlement. The contractual indemnity provision upon which Weyerhaeuser relies expressly excludes damages resulting from Weyerhaeuser's or its Engineer's negligence. Furthermore, any obligation to indemnify Weyerhaeuser is limited to work performed by Daniel pursuant to the alleged 1971 contract. The terms of the settlement agreement are relevant to an important issue in this case (Daniel's alleged liability under the indemnification provision), and Daniel does not have access to the information. Accordingly, Daniel is entitled to discovery of the settlement agreement.

Communications between Weyerhaeuser and Murphy are also relevant and discoverable under Rule 26(b)(1). Such communications are not privileged as they are not between Weyerhaeuser and its counsel. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam); *United States v. Gordon*, No. 4:07-CV-156-D, 2008 WL 1766753, at *1 (E.D.N.C. Apr. 17, 2008) ("The attorney-client privilege applies to confidential communications between an attorney and a client, but does not necessarily apply to all documents or correspondence that are in an attorney's

14

possession." (citations omitted)). Accordingly, Weyerhaeuser's objections to Daniel's RFP 24 are rejected. (*See* Pl.'s Resp. Opp'n at 7; Def.'s Mot. Compel, Ex. 4 – Daniel's First Set of RFPs at 14 (RFP 24 and Weyerhaeuser's objections to RFP 24).)

Daniel's RFP 22 does request some information which may be attorney-client privileged and/or protected under the attorney work-product doctrine. RFP 22 demands documents containing "analysis of the facts, reasons, and recommendations for settling the Nicholas Murphy Lawsuit . . . including, but not limited to, any memos, pre-trial reports, asbestos case profiles, Asbestos Litigation Forms (ALFs), or similar Documents." (Def.'s Mot. Compel, Ex. 4 – Daniel's First Set of RFPs [DE #36-4] at 13 (RFP 22).) Such information would be relevant to Weyerhaeuser's potential negligence for the reasons discussed above. To the extent RFP 22 requests legal analysis of facts and recommendations based on that analysis, such information may be privileged or protected.[13] However, privileged communications between an attorney and a client "may be inapplicable to facts incorporated in the communications."[14] *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981)). Weyerhaeuser has not submitted a privilege log in connection with its briefing, so the

---

[13] Weyerhaeuser raised attorney-client privilege and attorney work-product protection in its objections to RFP 22 (Def.'s Mot. Compel, Ex. 4 – RFP 24 [DE #36-4] at 14), but only hinted at attorney work product protection in its briefing (Pl.'s Resp. Opp'n at 7 (arguing that RFP 22 seeks "Weyerhauser's mental impressions concerning the *Murphy* lawsuit")).

[14] A waiver of attorney-client privilege can also occur when a party asserts a claim or defense that puts its attorney's advice at issue. *See Rhone-Poulenc Rorer*, 32 F.3d at 863–64; *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975).

15

court is unable to determine whether the documents and communications requested in RFP 22 are, in fact, privileged or protected. Accordingly, Daniel's motion to compel as to RFP 22 is granted. Weyerhaeuser may produce a sufficiently detailed privilege log, *see Kelly v. United States*, 281 F.R.D. 270, 276–77 (E.D.N.C. 2012), with respect to RFP 22 if it believes certain components of its response are privileged or protected and the parties may proceed as they normally would in such circumstances, seeking the court's intervention only after complying with the procedures outlined in the case management order that governs this lawsuit.

Daniel contends that this issue is relevant to RFPs 7, 17, & 20–25, and Interrogatories 3, 4, 6, & 8–12. (Def.'s Mem. Supp. Mot. Compel at 4, 7.) Weyerhaeuser has not contended otherwise. (Pl.'s Resp. Opp'n at 6–9.) Overruling Weyerhaeuser's relevancy objection to these requests, the court determines that Weyerhaeuser has failed to carry its burden to show why Daniel's motion to compel should be denied. *See Mainstreet Collection*, 270 F.R.D. at 241; *Johnson*, 2018 WL 5831997, at *5. Daniel's motion to compel as to RFPs 7, 17, & 20–25, and Interrogatories 3, 4, 6, & 8–12, is therefore granted.

### D. Costs and Fees

Daniel has requested the court award costs and fees in connection with the instant motion to compel. (Def.'s Mot. Compel at 3.) Subject to enumerated exceptions, Rule 37 requires the court, upon granting a motion to compel, to award expenses and fees incurred making the motion. Fed. R. Civ. P. 37(a)(5)(A); *Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 365 (D. Md. 2012). These exceptions

16

are where "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). None of the exceptions apply.

Daniel attempted in good faith to obtain the discovery from Weyerhaeuser prior to filing its motion to compel. Daniel tried numerous times to address these issues with Weyerhaeuser (Mot. Compel at 2–3), and the court held two informal discovery conferences in an attempt to address the dispute. It was only after the conferences that Daniel was given authorization to and filed the motion to compel. *See* Fed. R. Civ. P. 37 (a)(5)(A)(i).

Weyerhaeuser's position was not substantially justified. As explained by Judge Grimm,

> [a] party satisfies the "substantially justified" standard "if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think [that the failure to produce discovery is] correct, that is, if it has a reasonable basis in law and fact.'" *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 F. App'x 586, 599 (4th Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "Courts have concluded that 'substantial justification' could include making meritorious objections to requested discovery, or even engaging in a legitimate dispute over the sequence of discovery." *Kemp v. Harris*, 263 F.R.D. 293, 296–97 (D. Md. 2009) (citations omitted). However, to avoid the imposition of costs, "parties must sufficiently argue that they were substantially justified in their actions." *Id*. at 297 (citing *Humphreys Exterminating Co. v. Poulter*, 62 F.R.D. 392, 394 (D. Md. 1974)).

*Lynn*, 285 F.R.D. at 365. The bulk of Weyerhaeuser's refusal to provide the sought-after discovery stems from its position that its potential negligence is not relevant.

17

(Pl.'s Resp. Opp'n at 6.) Plaintiff can only reach that conclusion by ignoring[15] the plain text of the indemnity provision upon which it relies. These errors permeate Weyerhaeuser's refusal to provide discovery on factual issues regarding when and for whom Murphy worked at the New Bern mill and Weyerhaeuser's settlement of the Murphy litigation. Weyerhaeuser also chose not to provide specific objections and/or privilege log documentation regarding a potentially meritorious position regarding RFP 22. Thus, Weyerhaeuser has not shown it was substantially justified in resisting discovery. *See* Fed. R. Civ. P. 37 (a)(5)(A)(ii).

Lastly, the court discerns no other circumstances that would render an award of costs and fees unjust. *See* Fed. R. Civ. P. 37 (a)(5)(A)(iii). Accordingly, the court grants Daniel's request for attorney's fees and expenses, the amount of which will be determined by separate order. Daniel shall have fourteen (14) days from the date of this order to file a notice with accompanying affidavit of its costs and fees incurred in bringing the motion to compel. Weyerhaeuser shall have ten (10) days to file written objections to the costs and fees requested. Daniel shall have seven (7) days to respond to any objections.

## CONCLUSION

For the reasons explained above, Defendant's motion to compel [DE #36] is GRANTED. Plaintiff shall have thirty (30) days from the date of this order to provide the requested information. Defendant shall file its notice and affidavit of costs and

---

[15] Plaintiff's decision to elide key text from the alleged indemnity provision only underscores that its position is not substantially justified. (*See* Compl. ¶ 9 (omitting express exclusion for negligence).)

18

fees within fourteen (14) days. Plaintiff shall have ten (10) days to object to the costs and fees requested, and Defendant shall have seven (7) days to respond thereto.

This 28th day of June 2024.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge